UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

**BRUCE E. KATZ, M.D., P.C. D/B/A JUVA SKIN AND LASER CENTER,** individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

**PROFESSIONAL BILLING COLLECTIONS, LLC,**

*Defendant.*

---------------------------------------------------------------X

Case No. 1:20-cv-03043-AT

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Judge: Hon. Analisa Torres
Courtroom: 15D

**PLEASE TAKE NOTICE** that Plaintiff Bruce E. Katz, M.D., P.C. d/b/a Juva Skin and Laser Center ("Plaintiff") requests that the Court grant Plaintiff's Motion for Class Certification ("Motion"), certify the proposed class of similarly situated individuals per Federal Rules of Civil Procedure Rule 23(a) and 23(b), and permit Plaintiff leave to conduct limited discovery on class related matters.

This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, oral argument of counsel, and any other matter that may be submitted at the hearing.

Date:   October 13, 2020

**BRUCE E. KATZ, M.D., P.C. D/B/A/ JUVA SKIN AND LASER CENTER**, individually and on behalf of all others similarly situated,

/s/ *Jeffrey S. Arons*
One of Plaintiff's Attorneys

Jeffrey S. Arons
ja@aronslaw.net
Arons & Arons, LLC
76 South Orange Ave.

i

South Orange, New Jersey 07079
Telephone: (973) 762-0795
Facsimile: (973) 762-0279

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 2

III. ARGUMENT ............................................................................................... 3

    A.  The Alleged Class Meets Each Of The Requirements Of Rule 23(a). ............... 4

        1.  Class Membership Is Ascertainable. ........................................................ 5

        2.  The Proposed Class Is Sufficiently Numerous. ....................................... 6

        3.  The Class Shares Common Questions Of Law And Fact. ...................... 6

        4.  Plaintiff's Claims Are Typical. ................................................................ 7

        5.  Plaintiff And Counsel Are Adequate Representatives. ........................... 8

    B.  The Proposed Class Meets The Requirements Of Rule 23(b)(2). ...................... 8

    C.  The Proposed Class Meets The Requirements Of Rule 23(b)(3). ...................... 9

        1.  Common Questions Of Law And Fact Predominate. ........................... 10

        2.  A Class Action Is Superior To Any Other Method Of Adjudication. 10

    D.  Plaintiff Respectfully Requests Leave To Conduct Limited Discovery. ......... 12

IV.  CONCLUSION ......................................................................................... 13

# **TABLE OF AUTHORITIES**

*Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61 (S.D.N.Y. 2009) .......................................................6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997) ...............................4, 8, 10

*Bakalar v. Vavra*, 237 F.R.D. 59 (S.D.N.Y. 2006) ...........................................................................5

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2nd Cir. 2006) ..........................................................8

*Eder v. Aspen Home Improvements Inc.*,
       Case No. 8:20-cv-01306-SDM-JSS (M.D. Fla. filed June 8, 2020) ......................12

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
       281 F.R.D. 134, 138 (S.D.N.Y. 2012) ..................................................................6

*In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996) ..................................3

*Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169 (E.D. Pa. 2014) .......................................................11

*Hnot v. Willis Group Holdings, LTD.*, 228 F.R.D. 476 (S.D.N.Y. 2005) .........................................5

*Jackson v. Paycron Inc.*, No. 819CV00609WFJAAS,
       2019 WL 2085430 (M.D. Fla. May 13, 2019*)* ......................................................3

*Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384 (S.D.N.Y. 2015) ......................................9

*Leider v. Ralfe*, No. 1:01-CV-3137 HB FM,
       2003 WL 24571746 (S.D.N.Y. Mar. 4, 2003) .................................................3, 4

*Melito v. American Eagle Outfitters, Inc.*, 14-cv-2440(VEC),
       2017 WL 3995619 (S.D.N.Y., Sept. 8, 2017) .....................................................11

*Microsoft Corp. v. Raven Technology, Inc.*, No. 6:05-cv-1346-Orl-28DAB,
       2007 WL 438803 (M.D. Fla. Feb. 8, 2007) .......................................................12

*Mihelis v. Network Commercial Serv., Inc.*, No. CV 11-2215 WFK ARL,
       2014 WL 4828875 (E.D.N.Y. Aug. 8, 2014) .......................................................3

*Nat'l Convention Servs., LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
       No. 15CV7063 (JGK), 2019 WL 3409882 (S.D.N.Y. July 27, 2019) ..................11

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
       No. 12-22330-CIV, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014) .......................11

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993)..........................................................................6, 7

*Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467 (D. Del. 2014).......................................................3

*TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683 (S.D. Fla. 2012) .....................12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) .............................................................10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................................6

*Wendell H. Stone Company, Inc. v. PC Shield, Inc., et al.*,

        Case No. 2:18-cv-01135-AJS (W.D. Pa. filed Aug. 27, 2018)............................... 3

*Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS,

        2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .........................................................3


**STATUTES, RULES, SECONDARY SOURCES**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .......................................................1

Fed. R. Civ. P. 23, *et seq.*....................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

This case challenges Defendant Professional Billing Collections, LLC's ("PBC" or "Defendant") serial violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq.* ("JFPA" or "the Act"), specifically, its bar against sending unsolicited fax advertisements. Plaintiff Bruce E. Katz, M.D., P.C. d/b/a Juva Skin and Laser Center ("Katz" or "Plaintiff") filed its Class Action Complaint on April 16, 2020. (Dkt. 1.) To date, PBC has not appeared, answered, or otherwise responded to the Complaint. As such, Plaintiff now moves for class certification based on the well-pleaded allegations and the facts of record.

Plaintiff's claims plainly satisfy each requirement for class certification under Rule 23: the proposed Class is sufficiently numerous, common questions of law and fact predominate over individual, issues, Plaintiff's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, a class action is the superior method for resolving the claims at issue, as it would be impracticable and inefficient to require each class member to litigate his/her/its claims separately when they can be resolved on a class wide basis.

Consequently, the Court should certify the following Class:

> **Junk Fax Class:** All persons in the United States who (1) on or after four years prior of filing of the initial complaint in this action, (2) were sent, by Defendant or on Defendant's behalf, (3) a telephone facsimile message substantially similar to those attached as Group Exhibit A, (4) from whom Defendant claims it obtained prior express permission or invitation to send faxes in the same manner as Defendant claims it obtained prior express permission or invitation to send a fax to the Plaintiff .

(Compl. ¶ 21.)

Plaintiff also respectfully requests leave to conduct discovery regarding class related issues for a period of 120-days. Plaintiff intends to serve a subpoena on PBC's telephone service provider to obtain the outbound fax records for the fax number utilized to send Plaintiff. Plaintiff will then utilize the records to identify individual class members and the total number of faxes, which will enable Plaintiff to develop an adequate notice plan and establish damages.

As explained below, the Court should certify the proposed Class based on Plaintiff's well-pleaded allegations, and issue an Order granting Plaintiff leave to conduct discovery.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant PBC is a professional corporation incorporated and existing under the laws of the State of New York. (Compl. ¶ 1.) To market its products and services, Defendant PBC sends unsolicited fax advertisements *en masse* to Plaintiff and the Class—a plain violation of the JFPA. (*Id.* ¶¶ 5, 7-8.) Additionally, PBC's faxes failed to include proper opt-out language informing the recipients of their right to opt-out of receiving future faxes. (*Id.* ¶ 20; *see also* "PBC Faxes", true and accurate copies of the faxes are attached as Grp. Ex. A to the Complaint.)

In Plaintiff Katz's case, he received multiple unsolicited facsimile messages from Defendant PBC. (Compl. ¶¶ 12-13; *see also* PBC Faxes.) The PBC Faxes advertised PBC's good and services. (*Id.* ¶ 15; PBC Faxes.) Plaintiff never consented to receive any faxes from PBC and has no prior relationship with PBC. (*Id.* ¶ 17.) Further, absent proper opt-out language, PBC failed to provide Plaintiff a sufficient opt-out mechanism. (*Id.* ¶ 20.)

Plaintiff filed its Class Action Complaint on April 16, 2020. (Dkt. 1). On April 22, 2020, Plaintiff served PBC, via its agent for service of process. (Dkt. 11.) To date, PBC has failed to respond to the Complaint or reach out to counsel in any fashion. On September 9, 2020, the Clerk of Court entered default against PBC. (Dkt. 22.)

Based on the well-pleaded allegations, the Court should certify the Class.

**III.    ARGUMENT**

Prior to awarding relief to a class, the Court must enter an Order determining that class treatment is proper. *Mihelis v. Network Commercial Serv., Inc.*, No. CV 11-2215 WFK ARL, 2014 WL 4828875, at *4 (E.D.N.Y. Aug. 8, 2014) ("class damages cannot be awarded if no class is certified."). Further, a defendant's failure to appear "does not change the fundamental analysis this court must undertake in deciding whether to certify the class." *Leider v. Ralfe*, No. 1:01-CV-3137 HB FM, 2003 WL 24571746, at *8 (S.D.N.Y. Mar. 4, 2003). Following the entry of default, "the well-pleaded allegations of the complaint concerning issues other than damages must be accepted as true." *Id.* at *2 (collecting cases). This includes class related factual allegations. *See Jackson v. Paycron Inc.*, No. 819CV00609WFJAAS, 2019 WL 2085430, at *2 (M.D. Fla. May 13, 2019) (citations omitted) ("'[a] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact,' including specifically allegations relating to the prerequisites for class certification under Federal Rule 23.").

To be sure, courts routinely certify classes despite a defendant's failure to appear. *See Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) (certifying a TCPA class action despite the defendant's refusal to appear); *In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374, 386-87 (S.D.N.Y. 1996) (certifying a class action against General Electric Company and DeBeers following DeBeers' default); *Wendell H. Stone Company, Inc. v. PC Shield, Inc., et al.*, Case No. 2:18-cv-01135-AJS (W.D. Pa. filed Aug. 27, 2018) (Dkt. 40) (granting class certification in a JFPA case in which defendants failed to appear); *Skeway v. China Nat. Gas, Inc.*, 304 F.R.D. 467, 477 (D. Del. 2014) (granting class certification where the defendant failed to answer or respond). "Indeed, any other conclusion might give

3

defendants an incentive to default in situations where class certification seems likely." *Leider*, No. 1:01-CV-3137 HB FM, 2003 WL 24571746, at *8.

As explained below, class certification is appropriate because the proposed Class meets the requirements for certification.

### A.     The Alleged Class Meets Each Of The Requirements Of Rule 23(a)

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14, 117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact among the class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification under both Rule 23(b)(2) and 23(b)(3). Under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(3) there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

As explained further below, the proposed Class in this case meets all of the requirements of Rules 23(a), (b)(2), and (b)(3), and should therefore be certified.

### 1. Class Membership Is Ascertainable

Although not expressly required by Rule 23, courts generally require class membership to be ascertainable. *Hnot v. Willis Group Holdings, LTD.*, 228 F.R.D. 476, 481 (S.D.N.Y. 2005) ("The requirement of ascertainability, though not expressly mentioned in Rule 23, is fundamental. The class that plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling."); *see also Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (collecting cases) ("[r]ule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable."). "A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination." *Hnot*, 228 F.R.D. at 481.

Here, the proposed Class is ascertainable by reference to objective criteria. Plaintiff alleges he received two (2) unsolicited faxes from Defendant PBC. Below, Plaintiff requests leave to conduct limited class discovery to obtain records of all facsimile messages sent by Defendant using the same fax number that was utilized to fax Plaintiff. The information is likely obtainable by serving a subpoena on the telephone service provider ("TSP") associated with the Defendant's facsimile telephone number. Once Plaintiff obtains the fax records, they can be utilized to determine the individuals faxed and the number of faxes sent. Further, there is nothing subjective about whether an individual received a fax during the subject time period. While it is unnecessary for Plaintiff to identify each potential class member at this time, it is clear that class membership will be based on objective criteria, the call fax records. As such, membership in the proposed Class is ascertainable.

### 2.      The Proposed Class Is Sufficiently Numerous

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While no specific number of class members is necessary to establish numerosity, courts generally agree that forty (40) members is sufficient. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (citing *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 141-42 (2d ed. 1985)) ("A leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable.); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 138 (S.D.N.Y. 2012) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995) ("Numerosity may be presumed when a class consists of forty or more plaintiffs.")). "[A] plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts." *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. 2009).

In this case, since the allegations of the Complaint are admitted, Defendant concedes that it has sent thousands of unsolicited facsimile messages to the proposed Class. (Compl. ¶ 23.) Moreover, common sense dictates that for a financial facsimile advertising scheme to have any worthwhile result, Defendant would have had to fax hundreds or thousands of individuals. Accordingly, the proposed Class satisfies the numerosity requirement.

### 3.      The Class Shares Common Questions Of Law And Fact

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality prong, the representative plaintiff must demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores,*

6

*Inc. v. Dukes*, 131 S.Ct. 2541, 2545 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). But the claims don't need to be identical. Rather, even a single common question will do. *See id.* at 2556 (citation omitted).

Plaintiff and the proposed Class share multiple common issues of law and fact, including whether: (1) PBC sent unsolicited fax advertisements; (2) PBC's faxes advertised the commercial availability of property, goods, or services; (3) PBC obtained prior express consent from the recipients to send the faxes; (4) PBC knowingly violated the JFPA; (5) the PBC faxes contained proper opt-out language; and (6) the Class is entitled to injunctive relief. (Compl. ¶ 24). And because the Class is limited to individuals who received at least one unsolicited facsimile message from Defendant for the same purpose and using the same equipment. (*Id.* ¶ 21), the litigation will answer for everyone whether the unsolicited facsimile messages were unlawful. In short, the case will produce common questions of law and fact for all class members.

### 4.     Plaintiff's Claims Are Typical

Plaintiff's claims are typical as well. The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993) (citation omitted). Moreover, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims. *Id*. at 936-37.

Here, Defendant subjected Plaintiff and the Class to a uniform course of conduct. That is, Defendant sent unsolicited faxes to Plaintiff and all members of the Class. The Class is also limited to members who received facsimile messages in the same manner, from the same Defendant, and for the same purpose (to advertise Defendant's products and services). Thus, if Plaintiff proves that the faxes were unlawful, then they violated the JFPA with respect to everyone. Consequently, the Court should find that the requirement of typicality is met.

### 5. Plaintiff And Counsel Are Adequate Representatives

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Amchem Products, Inc.*, 117 S.Ct. at 2250-2251. Moreover, "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interest antagonistic to the interests of the other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2nd Cir. 2006).

Plaintiff and its counsel have and will continue to fairly represent the Class, and neither has any conflict with the class members. (Compl. ¶ 26). To date, Plaintiff and proposed Class Counsel have spent significant time and resources into the investigation and prosecution of this action. Proposed class counsel is a respected member of the legal community and has the resources necessary to conduct litigation of this nature.

Accordingly, the Court should find this requirement is met and appoint Jeffrey S. Arons of Arons & Arons, LLC as Class Counsel, and Plaintiff Katz as the Class Representative.

### B. The Proposed Class Meets The Requirements Of Rule 23(b)(2)

Once Rule 23(a) is satisfied, the inquiry turns to Rule 23(b). In this case, Plaintiff seeks

certification under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S.Ct. 2451 at 2557. To satisfy Rule 23(b)(2), Plaintiff "must demonstrate that the class is 'cohesive.'" *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 395 (S.D.N.Y. 2015).

In this case, Defendant subjected Plaintiff and the Class to a uniform course of conduct. Defendant PBC sent repeated faxes to consumers and businesses advertising their goods and services. Further, Defendant failed to obtain any prior express consent from Plaintiff to send the faxes at issue. Additionally, Defendant uniformly failed to sufficiently apprise class members of their right to opt-out of future faxes. (Compl. ¶ 19.) And Defendant concedes that it has acted and refused to act in the same or similar manner with respect to all Class members. (*Id.* ¶ 27.) In short, nothing about Defendant's conduct varied in any significant manner with respect to the members of the Class. Furthermore, given the situation the Court is faced with—evaluating a motion for class certification in the absence of key information that only Defendant possesses—certification pursuant to Rule 23(b)(2) is particularly apt. That is, (b)(2) classes do not require the Court to direct notice to all class members and, further, in the absence of any notice the Court can still put an end to Defendant's unlawful conduct. Therefore, the Court should issue an Order granting certification pursuant to Rule 23(b)(2).

      **C.**    **The Proposed Class Meets The Requirements Of Rule 23(b)(3)**

Certification is also warranted under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class

predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1. Common Questions Of Law And Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231 (1997). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).'" *Id.* (citation omitted).

Here, Plaintiff and the Class were subjected to an identical course of conduct insofar as Defendant PBC sent unsolicited faxes to Plaintiff and all members of the proposed Class. (Compl. ¶¶ 15, 18.) Further, Defendant concedes that the common questions predominate over any potential issues affecting individual members of the proposed Class. (*Id.* ¶ 28.) Because the proposed Class is limited to individuals who received PBC Faxes in the same fashion as Plaintiff, the Court should find that common issues predominate over any hypothetical individualized issues.

### 2. Class Action Is Superior To Any Other Method Of Adjudication

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior to alternative methods of adjudication, courts consider the

following nonexhaustive list of factors:

> (1) the class members' interests in individually controlling the litigation, (2) the extent and nature of any litigation concerning the controversy already begun by class members, (3) the desirability of concentrating the litigation in the particular forum, and (4) the likely difficulties in managing a class action.

*Nat'l Convention Servs., LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 15CV7063 (JGK), 2019 WL 3409882 (S.D.N.Y. July 27, 2019) (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)). However, a class action "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Melito v. American Eagle Outfitters, Inc.*, 14-cv-2440(VEC), 2017 WL 3995619, at *9 (S.D.N.Y. Sept. 8, 2017) (citing *In re U.S. Foodservice, Inc. Pricing Litig*, 729 F.3d 108, 130 (2d Cir. 2013).

      JFPA cases are best treated as class actions. Here, Plaintiff seeks statutory damages in the amount of $500 per violation—a small amount that renders individual suits prohibitively expensive. Indeed, Defendant concedes that the amounts in controversy are too low to encourage individual litigation, and maintaining a class action in this case would be manageable and superior to any other method of adjudication. (Compl. ¶¶ 28-29.) Moreover, Defendant also concedes that individualized trials would result in duplicative cases and inconsistent rulings. (*Id.*) And individualized trials would put a strain on courts and waste judicial time and resources. Unsurprisingly, courts certify classes for violations of the JFPA regularly. *See Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (certifying a JFPA class and noting, "TCPA classes are routinely certified as class actions[.]"); *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 191 (E.D. Pa. 2014) (certifying a JFPA class noting, "each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the

prosecution of separate actions.").

As such, the Court should find that a class would be superior here.

D.  **Plaintiff Respectfully Requests Leave To Conduct Limited Discovery**

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . *or when authorized by these rules, by stipulation, or by court order.*" Fed. R. Civ. P. 26(d)(1) (emphasis added). Courts have found that post-default discovery is permissible and can be necessary to establish damages. *See TracFone Wireless, Inc. v. Technopark Co., Ltd.*, 281 F.R.D. 683, 691 (S.D. Fla. 2012) ("The Court finds such post-default discovery is permissible."); *Microsoft Corp. v. Raven Technology, Inc.*, No. 6:05-cv-1346-Orl-28DAB, 2007 WL 438803, at n.2 (M.D. Fla. Feb. 8, 2007) ("Of course, Microsoft could have pursued discovery, notwithstanding the default."); *Eder v. Aspen Home Improvements Inc.*, Case No. 8:20-cv-01306-SDM-JSS (M.D. Fla. filed June 8, 2020) (Dkt. 14) (granting Plaintiff leave to conduct discovery related to default class certification and damages).

Here, as previously noted, Plaintiff will require limited discovery to establish a notice plan, class wide damages, and determine what assets each Defendant possesses. Plaintiff respectfully requests a 120-day period to conduct limited discovery. Specifically, Plaintiff seeks to serve third-party discovery, in the form of subpoenas, on the telephone service provider for the number associated with the Defendant's fax machine. Once Plaintiff receives the outbound fax records for the subject fax number, it will be able to identify the specific, unique fax numbers that received the unsolicited advertisement faxes in question and identify the individuals and/or businesses. Further, Plaintiff is prepared to hire an expert witness to opine as to the facts and process, if necessary. This process will allow Plaintiff to demonstrate to the Court the number of individuals that were called, harassed, and harmed by Defendants' unlawful conduct. Moreover,

the information will be used to develop an adequate notice plan and to demonstrate the appropriate sum of damages. Plaintiff also requests permission to seek third-party discovery to determine whether Defendants have the financial ability to pay any potential judgment. Finally, to the extent the Court determines that any area of Plaintiff's motion needs additional factual substantiation, Plaintiff respectfully requests permission to conduct limited discovery regarding those matters.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court certify the Class, appoint Jeffrey S. Arons, of Arons & Arons, LLC as Class Counsel, appoint Plaintiff Katz as Class Representative, and award such additional relief as it deems necessary, reasonable, and just.

|  |  |
|---|---|
|  | **BRUCE E. KATZ, M.D., P.C. D/B/A/ JUVA SKIN AND LASER CENTER**, individually and on behalf of all others similarly situated, |
| Date:   October 13, 2020 | /s/ *Jeffrey Arons* <br> One of Plaintiff's Attorneys |
|  | Jeffrey S. Arons <br> ja@aronslaw.net <br> Arons & Arons, LLC <br> 76 South Orange Ave. <br> South Orange, New Jersey 07079 <br> Telephone: (973) 762-0795 <br> Facsimile: (973) 762-0279 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 13, 2020, I served a true and accurate copy of the foregoing documents by first-class U.S. Mail, postage prepaid, and properly addressed to the following parties:

Professional Billing Collections, LLC
4224 White Plains Rd., Suite 303
Bronx, New York, NY 10466

/s/ Jeffrey S. Arons